### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

**CORNELIA BARDALES, ET AL.**                    **CIVIL ACTION**

**VERSUS**                                       **NO. 19-340-WBV-DMD**

**FONTANA & FONTANA, LLC, ET AL.**               **SECTION: D (2)**

### ORDER AND REASONS

Before the Court is Plaintiffs' Motion For Class Certification, filed pursuant to Federal Rule of Civil Procedure 23.[1]  The Motion is unopposed.  Also before the Court is a Joint Motion for Preliminary Approval of Class Settlement and Preliminary Determination on Class Certification.[2]  After careful consideration of the parties' memoranda and the applicable law, the Motion for Class Certification is **GRANTED** and the Joint Motion for Preliminary Approval of Class Settlement and Preliminary Determination on Class Certification is **GRANTED in part, as modified,** and **DENIED in part, as moot.**

## I.   FACTUAL AND PROCEDURAL BACKGROUND

This matter involves claims arising from the defendants' alleged violations of the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692, *et seq.*  On January 16, 2019, Cornelia Bardales filed a Class Action Complaint, alleging that Fontana & Fontana, LLC, Darryl M. Fontana and Jules A. Fontana, III (collectively, "Defendants") violated the FDCPA by sending her, and other similarly situated

---

[1] R. Doc. 39.
[2] R. Doc. 44.

consumers, a form collection letter that failed to notify her that the balance due on an outstanding debt may increase due to interest and fees.[3]  Ms. Bardales alleges that on November 28, 2018, Defendants sent, or caused to be sent, on behalf of Mariner Finance of Harvey a form collection letter, attached to the Complaint as Exhibit 1.[4] Ms. Bardales asserts that the letter is signed by both of the individual defendants, and identifies a past due balance of $244.04 and a net payoff of $2,773.81.[5]  Ms. Bardales alleges that Mariner Finance of Harvey assesses interest and/or fees on its loans, but that Defendants' collection letter failed to notify her that interest and/or fees are accruing on the debt.

Ms. Bardales claims that, through her counsel, she sent a letter to Defendants on December 20, 2018, disputing and requesting verification of the alleged debt.[6]  Ms. Bardales asserts that instead of verifying the debt, Defendants filed a lawsuit against her, entitled *Pioneer Credit Company dba Mariner Finance LLC v. Cornelia Bardeles*, Case No. 165-531, in the First Parish Court for Jefferson Parish, Louisiana, to collect the alleged past due Mariner Finance of Harvey debt.[7]  Ms. Bardales submitted a copy of the state court petition in that case as an exhibit to her Complaint.[8]  Ms. Bardales asserts that the state court petition seeks the sum of $2,907.25, plus late charges of $30 and interest thereon, at the rate of 18%.[9]

---

[3] R. Doc. 1.
[4] *Id.* at p. 1 (*citing* R. Doc. 1-1).
[5] R. Doc. 1 at p. 3.
[6] *Id.*
[7] *Id.*
[8] R. Doc. 1-2.
[9] R. Doc. 1 at p. 3.

Ms. Bardales asserts claims for relief individually and on behalf of the following class: a class of consumers who (1) within one year prior to the filing of this action; (2) were sent an initial collection letter from defendants; (3) in an attempt to recover an alleged obligation accruing interest and/or fees incurred for personal, family, or household purposes; and (4) in which defendants did not disclose that they were continuing to add interest and/or fees to the subject account.[10]   While Ms. Bardales does not know the size or identities of the class, she believes it satisfies the numerosity requirement because the class is more than 100 individuals and their identities can be readily determined from Defendants' business records.[11]   Ms. Bardales asserts that common issues of law and fact predominate over any questions affecting only individual members of the class, including whether Defendants' actions violate 15 U.S.C. §§ 1692e, e(2)(A) and e(10) by failing to disclose in its letters that it was adding interest and/or fees to the account.[12]

Ms. Bardales also asserts that her claims are typical of the claims of the class and do not conflict with the interests of any other members.  Mrs. Bardales claims that she will fairly and adequately represent the class members' interests.  She also asserts that she has retained counsel who are qualified to pursue this litigation, and that a class action is superior for the fair and efficient adjudication of the class members' claims, and that Congress specifically envisioned class actions as a principal means of enforcing the FDCPA.[13]   As such, Ms. Bardales believes that she

---

[10] *Id.* at p. 4.
[11] *Id.*
[12] *Id.* at pp. 4-5.
[13] *Id.* at p. 5 (*citing* 15 U.S.C. § 1692k).

and the class members are entitled to statutory damages for Defendants' violations of the FDCPA.  Ms. Bardales also asserts a claim on behalf of herself, individually, for Defendants' violation of FDCPA by pursing litigation before providing her the requested verification of the debt.[14]

On April 23, 2019, Ms. Bardales filed an Amended Class Action Complaint, adding a proposed class representative, Donald Russell, as a plaintiff.[15]  According to Ms. Bardales, both parties' claims arise from the same collection letter.[16]

## II.   CLASS CERTIFICATION

Ms. Bardales and Mr. Russell (collectively, "Plaintiffs") filed the instant Motion for Class Certification on December 9, 2019, asking the Court to certify this case to proceed as a class action pursuant to Federal Rule of Civil Procedure 23 and Local Rule 23.1 of the Court's Local Civil Rules.[17]  As set forth in the original Class Action Complaint and the Amended Class Action Complaint, Plaintiffs seek to bring this action on behalf of themselves and as a class action, alleging that Defendants violated the FDCPA by sending them, and other similarly situated consumers, a form collection letter that failed to notify them that the balance due on an outstanding debt may increase due to interest and fees.[18]  Plaintiffs seek certification of a class defined as follows:

> A Louisiana class of persons who: (i) within one year prior to the filing of this action; (ii) were sent a letter by Defendants in the form of Exhibit 1 or 2, attached to the Amended Class Action Complaint; (iii) in an

---

[14] R. Doc. 1 at p. 8.
[15] R. Docs. 9, 13 & 14.
[16] R. Doc. 9 at p. 1.
[17] R. Doc. 39.
[18] R. Docs. 1 & 14.

attempt to recover an alleged obligation accruing interest and/or fees incurred for personal, family, or household purposes; and (iv) in which Defendants did not disclose that they were continuing to add interest and/or fees to the subject account.[19]

## A. Legal Standard

Under Fed. R. Civ. P. 23(a), the party seeking class certification bears the burden of establishing four threshold requirements: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representatives are typical of the claims or defenses of the class; and (4) the class representatives will fairly and adequately protect the interests of the class.[20]

In addition to satisfying the four prerequisites of Rule 23(a), a party seeking certification must be able to show that one of the following requirements of Rule 23(b) is met: (1) inconsistent adjudications would result in incompatible standards of conduct for the party opposing the class or would be dispositive of the interests of nonparty class members or would substantially impair or impede the ability of nonparty class members to protect their interests; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class; or (3) issues of law and fact predominate issues unique to individual class members, and maintaining the class action is the superior procedural vehicle.[21]

---

[19] R. Doc. 39 at pp. 1-2; R. Doc. 39-1 at p. 2 (emphasis in original).
[20] *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir. 2005) (citing *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479-80 (5th Cir. 2001)).
[21] Fed. R. Civ. P. 23(b).

### B. Analysis

For the following reasons, Plaintiffs have shown that the proposed class meets the requirements for conditional certification under Fed. R. Civ. P. 23.

### 1. Rule 23(a) Requirements

#### a. *Numerosity*

To satisfy the numerosity requirement, "a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members."[22]  As Plaintiffs point out, this Court has recognized that, "There is no magic number when this cut off is reached."[23]  In considering a request to certify a class consisting of 33 members, the Fifth Circuit emphasized that, "The proper focus is not on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors."[24]  One of our sister courts has held that, "Although the number of members in a proposed class is not determinative of whether joinder is impracticable, it has been noted that any class consisting of more than 40 members 'should raise a presumption that joinder is impracticable.'"[25]  The Fifth Circuit has also held that, "although the number of members in a proposed class is not determinative of whether joinder is impracticable,

---

[22] *Pederson v. Louisiana State University*, 213 F.3d 858, 868 (5th Cir. 2000) (quoting *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981)) (internal quotation marks omitted).
[23] R. Doc. 39-1 at p. 5 (citing *Kreger v. Gen. Steel Corp.*, Civ. A. No. 07-575, 2010 WL 2902773, at *4 (E.D. La. July 19, 2010).
[24] *Phillips v. Joint Legislative Committee on Performance and Expenditure of the State of Mississippi*, 637 F.2d 1014, 1022 (5th Cir. 1981).
[25] *Everson v. Bunch*, 2016 WL 3255023, at *2 (M.D. La. June 13, 2016) (citing *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999)).

the size of the class in this case – 100 to 150 members – is within the range that generally satisfies the numerosity requirement."[26]

Plaintiffs assert that the numerosity requirement is satisfied in this case because Defendants have confirmed that approximately 821 collection letters were sent to Louisiana consumers, seeking to collect a past due Mariner Finance of Harvey debt, within the relevant time period.[27]  Based upon the foregoing legal authority, the Court finds that the proposed class satisfies the numerosity requirement of Rule 23(a).

### b. *Commonality*

The commonality requirement of Rule 23(a)(2) requires that there are questions of law or fact common to the class.[28]  "The test for commonality is not demanding and is met 'where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members.'"[29]

Plaintiffs assert that all of the proposed class members share a common cause of action because they were all sent a letter by Defendants to collect a consumer payday loan, which failed to notify the consumers that interest and late fees are still being added to the account.[30]  Citing authority from outside this Circuit, Plaintiffs

---

[26] *Mullen*, 186 F.3d at 624 (citations omitted).

[27] R. Doc. 39-1 at p. 5 (*citing* R. Doc. 39-4 at p. 5).

[28] Fed. R. Civ. P. 23(a)(2).

[29] *Mullen*, 186 F.3d at 625 (quoting *Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1997)).

[30] R. Doc. 39-1 at p. 7.  Plaintiffs assert that the letters were "in the form of Exhibit 1 and 2." *Id*.  The Court notes that there is no "Exhibit 2" attached to the Motion for Class Certification, and that "Exhibit 1" to the Motion is a copy of Defendants' discovery responses.  *See* R. Doc. 39-4.  The Court believes that Plaintiffs' reference to "Exhibit 1 and 2" is a reference to Exhibits 1 and 2 to the Amended Class Action Complaint.  *See* R. Docs. 14-1 & 14-2.

assert that, "To establish commonality, it is sufficient that Plaintiff allege that all class members received the same collection letter."[31]  Plaintiffs further assert that, "The very definition of this class logically involves common questions, such as whether the subject collection letter violates 15 U.S.C. § 1692g."[32]  Plaintiffs argue that the principle legal issue in this case is whether Defendants' letters, which fail to notify consumers that interest and late fees are still accruing on the outstanding debt, violate the FDCPA.[33]  Plaintiffs assert that FDCPA claims based on standard language or standard practices are well suited for class certification.[34]

The Court notes that Plaintiffs' assertion that they, and each class member, were sent a letter by Defendants "in the form of Exhibit 1 and 2," suggests that the potential class members received different collection letters.[35]  However, the Court has reviewed the two letters and finds the content of the letters is identical.[36]  The Court further finds that, because a determination regarding whether the collection letters violated the FDCPA would resolve the allegations of the entire class, Plaintiffs have satisfied the "low threshold" of the commonality requirement.

### c. *Typicality*

"Like commonality, the test for typicality is not demanding."[37]  Typicality focuses on the general similarity between the named plaintiffs' legal and remedial

---

[31] R. Doc. 39-1 at pp. 7-8 (quoting *Swanson v. Mid Am, Inc.*, 186 F.R.D. 665, 668 (M.D. Fla. 1999)) (internal quotation marks omitted).

[32] R. Doc. 39-1 at p 8 (quoting *Macarz v. Transworld Systems, Inc.*, 193 F.R.D. 46, 49 (D. Conn. 2000)).

[33] R. Doc. 39-1 at p. 8.

[34] *Id*. (citing *Drossin v. National Action Financial Services, Inc.*, 255 F.R.D. 608, 615-16 (S.D. Fla. 2009); *Swanson*, 186 F.R.D. at 668).

[35] R. Doc. 39-1 at p. 7.

[36] R. Docs. 14-1 & 14-2.

[37] *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999).

theories and the legal and remedial theories of those whom they purport to represent.[38]  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims."[39]

In the instant case, the claims of the named Plaintiffs are virtually identical to those of the proposed class members.  The Amended Class Action Complaint alleges that Defendants violated the FDCPA by sending Plaintiffs collection letters on behalf of Mariner Finance of Harvey that failed to notify Plaintiffs that interest and/or fees are continuing to accrue on the debt.[40]  The legal theories alleged by Plaintiffs are the same as those alleged by the rest of the class, *i.e.* that Defendants violated the FDCPA by sending the potential class members collection letters that failed to notify the consumers that interest and/or fees are continuing to accrue on the debt owed to Mariner Finance of Harvey.  As such, the typicality requirement of Rule 23(a)(3) is satisfied in this case.

### d. *Adequacy of Representation*

Under Rule 23(a)(4), the Court must consider whether the representative parties will "fairly and adequately protect the interests of the class."[41]  "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named

---

[38] *Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1997).

[39] *Baricuatro v. Indus. Pers. & Mgmt. Servs., Inc*., Civ. A. No. 11-2777, 2013 WL 6072702, at *7 (E.D. La. Nov. 18, 2013) (quoting *In re Chinese–Manufactured Drywall Products Liability Litigation*, MDL No. 2047, 2013 WL 499474 *8 (E.D. La. Feb. 7, 2013)).

[40] R. Doc. 14.

[41] Fed. R. Civ. P. 23(a)(4).

parties and the class they seek to represent."[42]  Class representatives "must be part of the class and 'possess the same interest and suffer the same injury' as the class members."[43]  To meet the adequacy requirement, "the court must find that class representatives, their counsel, and the relationship between the two are adequate to protect the interests of absent class members."[44]

Plaintiffs assert that they understand their responsibilities as the class representatives and that they are represented by counsel who are experienced with handling collection abuse cases and consumer class actions.[45]  Plaintiffs point out that their counsel, O. Randolph Bragg, has been approved by other courts to serve as counsel in class actions and consumer suits, and that Mr. Bragg and his co-counsel have been described as "highly experienced attorneys, with a significant history of class action litigation experience between them."[46]  Plaintiffs also note that their counsel, Mr. Bragg and Ms. Karen E. Gesund, were designated as class counsel by another Section of this Court in a prior case.[47]

Plaintiffs have submitted Declarations from their counsel, O. Randolph Bragg and Karen E. Gesund, which show that they both regularly engage in debt collection

[42] *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625, 17 S.Ct. 2231, 2250, 138 L.Ed.2d 689 (1997).
[43] *Id.*, 521 U.S. at 625-26, 17 S.Ct. at 2250-51 (quotation omitted).
[44] *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005) (citing *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002)).
[45] R. Doc. 39-1 at p. 10 (*citing* R. Docs. 39-2 & 39-3).
[46] R. Doc. 39-1 at p. 11 (quoting *Acik v. I.C. System, Inc.*, 251 F.R.D. 332, 336 (N.D. Ill. 2008); *Borcherding-Dittloff v. Transworld Systems, Inc.*, 185 F.R.D. 558, 563-64 (W.D. Wis. 1999); *Brink v. First Credit Resources*, 185 F.R.D. 567, 571 (D. Ariz. 1999); *Van Vels v. Premier Ath. Ctr.*, 182 F.R.D. 500, 511 (W.D. Mich. 1998)) (internal quotation marks omitted).
[47] R. Doc. 39-1 at p. 11 (citing *Masson v. Pioneer Credit Recovery, Inc.*, Civ. A. No. 16-1887, 2017 WL 819099, at *1 (E.D. La. Mar. 2, 2017)).

actions lawsuits, class actions, and complex litigation.[48]  Plaintiffs' counsel have indicated their willingness to serve as class counsel in this matter by filing the Class Action Complaint and the Amended Class Action Complaint.[49]  Plaintiffs' counsel also conferred with Defendants' counsel and took steps to file a Joint Motion for Preliminary Approval of Class Settlement, which is also before the Court.[50]  As such, Plaintiffs' counsel have demonstrated that they will fairly and adequately represent the interests of the class and are qualified to serve as class counsel under Rule 23(g).

The Court further finds that the interests of Ms. Bardales and Mr. Russell appear to be in alignment with the interests of the potential class members.  Although not addressed in the Motion for Class Certification, Plaintiffs allege in the Amended Class Action Complaint that Ms. Bardales is a resident of Kenner, Louisiana and Mr. Russell is a resident of Baton Rouge, Louisiana.[51]  As such, Ms. Bardales lives in this judicial district.  Additionally, Ms. Bardales and Mr. Russel, as Louisiana residents, can adequately represent the interests of the potential class, which consists of Louisiana consumers who received collection letters from Defendants on behalf of Mariner Finance of Harvey regarding an outstanding debt.  The Court, therefore, finds that the adequacy requirement of Rule 23(a)(4) has been met.

---

[48] R. Docs. 39-2 & 39-3.
[49] *See*, R. Docs. 1 & 14.
[50] R. Doc. 44.
[51] R. Doc. 14 at p. 2.

### 2. Rule 23(b) Requirement

Plaintiffs further assert that class certification is proper under Rule 23(b)(3).[52] Rule 23(b)(3) provides that class certification is proper when "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for failure and efficiently adjudicating the controversy." [53] Rule 23(b)(3) imposes two prerequisites, predominance and superiority.[54] "In order to 'predominate,' common issues must constitute a significant part of the individual cases."[55] The purpose of this requirement is to ensure that the proposed class is "sufficiently cohesive to warrant adjudication by representation."[56] To determine whether common issues predominate, "the Court must identify the substantive issues that will control the outcome, assess which issues will predominate, and then determine whether the issues are common to the class." [57] The predominance requirement under Rule 23(b)(3) is more demanding than the commonality requirement.[58]

Here, Plaintiffs assert that the following question of law predominates over any questions affecting only individual class members: whether the collection letters

---

[52] R. Doc. 39-1 at pp. 12-15.

[53] Fed. R. Civ. P. 23(b)(3).

[54] *In re OCA, Inc. Securities and Derivative Litigation*, Civ. A. No. 05-2165, 2008 WL 4681369, at *9 (E.D. La. Oct. 17, 2008).

[55] *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir. 1986).

[56] *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623, 17 S.Ct. 2231, 2249, 138 L.Ed.2d 689 (1997).

[57] *Everson v. Bunch*, Civ. A. No. 14-583-SDD-EWD, 2016 WL 3255023, at *3 (M.D. La. June 13, 2016) (quoting *Haley v. Merial, Ltd.*, 292 F.R.D. 339, 353 (N.D. Miss. 2013)) (internal quotation marks omitted).

[58] *Reyes v. Julia Place Condominiums Homeowners Ass'n, Inc.*, Civ. A. No. 12-2043, 2014 WL 7330602, at *11 (E.D. La. Dec. 18, 2014) (citing *Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294, 301 (5th Cir. 2003)).

sent by Defendants on behalf of Mariner Finance of Harvey, which failed to notify the recipient that interest and/or fees were continuing to accrue on the debt owed, violate the FDCPA.[59]  The Court finds that the issue of whether the language in Defendants' two identical collection letters violates the FDCPA predominates in this case.[60]  As another Section of this Court previously noted, "Other courts have found the predominance and superiority requirements were met in FDCPA actions where a single debt collector mails similar debt collection letters to proposed class members."[61]  As such, the predominance factor of Rule 23(b)(3) has been satisfied.

In determining whether the superiority requirement of Rule 23(b)(3) is satisfied, the Court may consider the following four factors: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action.[62]

Plaintiffs assert that a class action is the superior method of adjudicating this matter because it will provide an efficient and appropriate resolution of the controversy.[63]  Plaintiffs point out that Congress specifically contemplated FDCPA class actions as a principal means of enforcing the statute.[64]  Plaintiffs assert that,

---

[59] R. Doc. 39-1 at p. 13.

[60] *See*, *Reyes*, Civ. A. No. 12-2043, 2014 WL 7330602, at *11.

[61] *Id*. (citing cases).

[62] Fed. R. Civ. P. 24(b)(3).

[63] R. Doc. 39-1 at p. 15.

[64] R. Doc. 39 at p. 4 (*citing* 15 U.S.C. §§ 1692k(a)(2)(B) & 1692k(b)(2)).

"In determining superiority, courts also consider the anticipated amount of recovery for each plaintiff. Class actions are particularly appropriate where multiple lawsuits would not be justified because of the small amount of money sought by the individual plaintiff."[65] Plaintiffs claim that the interest of class members to individually control the litigation is small because the maximum statutory damages in an individual action are $1,000.[66]

Because the potential class members were allegedly harmed by a common set of facts and will rely on the same legal theories, the Court finds that certifying the case as a class action is the superior and most efficient means of resolving the claims.

### 3. Rule 23(g) Requirement

A court that certifies a class must also appoint class counsel.[67] In appointing class counsel, the court must consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class.[68]

Here, Plaintiffs seek to have their counsel, O. Randolph Bragg and Karen E. Gesund, appointed as class counsel.[69] The Court has carefully reviewed the

---

[65] R. Doc. 39-1 at p. 15 (quoting *Israel v. Avis Rent-a-Car Sys.*, 185 F.R.D. 372, 387 (S.D. Fla. 1999), *rev'd sub nom Rutstein v. Avis Rent-A-Car Systems, Inc.*, 211 F.3d 1228 (11th Cir. 2000) (*citing* Advisory Committee Note to 1996 Amendment to Fed. R. Civ. P. 23)) (internal quotation marks omitted).
[66] R. Doc. 39 at p. 4; *See* R. Doc. 39-1 at pp. 14-15.
[67] Fed. R. Civ. P. 23(g).
[68] Fed. R. Civ. P. 23(g)(1)(A).
[69] R. Doc. 39-1 at p. 12.

qualifications of Mr. Bragg and Ms. Gesund and, for the reasons stated in the section

regarding adequacy of representation, finds they are well qualified to serve as class

counsel.

## III.    PROPOSED SETTLEMENT AGREEMENT

### A. Class Definition

The proposed Class Settlement Agreement defines the settlement class as:

> (i) all persons within one year prior to the filing of this action (ii) who
> were sent a letter by Defendants in the form of <u>Exhibit 1 or 2</u>, attached
> to the Amended Complaint (Doc. Nos. 14-1 and 14-2), (iii) in an attempt
> to recover an alleged obligation accruing interest and/or fees incurred
> for personal, family, or household purposes; (iv) in which Defendants did
> not disclose that they were continuing to add interest and/or fees to the
> subject account.[70]

The parties further clarify that they have interpreted "in the form of Exhibit 1 or 2,"

as used in the class definition, to mean collection letters in the form of Exhibit 1 or 2,

attached to the Amended Class Action Complaint, sent by Defendants to individuals

in the State of Louisiana, in an attempt to collect an alleged obligation incurred for

personal, family, or household purposes which was not returned to Defendants as

undeliverable by the United States Post Office.[71]  Defendants represent that the class

size is approximately 821 people.[72]

### B. Monetary Payment

Under the terms of the proposed Class Settlement Agreement, Defendants will

pay $10,000 to the class, which is approximately 1% or more of the net worth of each

---

[70] R. Doc. 44-2 at p. 3 (emphasis in original).
[71] *Id.*
[72] *Id.*

Defendant, as statutory damages pursuant to 15 U.S.C. § 1692k(a)(2).[73]  The parties

assert that the $10,000 is payable on a pro rata basis (a) to each of the class members

to whom the notice was not returned as undeliverable and (b) who submitted a claim

to share in the distribution of the settlement fund.[74]   The Class Settlement

Agreement provides that, "Any funds which remain unclaimed ninety (90) days after

the settlement payments are disbursed to the Class Members will be paid as a cy pres

award to Southeast Louisiana Legal Services' fund for consumer representation and

education.[75]   Defendants also agree to pay $1,000 each to Ms. Bardales and Mr.

Russell for their individual claims, as provided by the FDCPA, and $3,000 each for

their services as class representatives, for a total of $4,000 each.[76]  Defendants have

agreed to pay the cost and expense of class notification and administration.[77]

### C. Class Notice

The parties have agreed that class members will be notified of the settlement

by first class United States mail to the prospective class member's last known

address, as listed in Defendants' records and updated from a National Change of

Address ("NCOA") search performed by the proposed settlement administrator, First

Class, Inc., unless the prospective class member has informed Defendants in writing,

as of the date of the Court's order preliminarily approving settlement, that: (1) he or

she is represented by an attorney and provided a mailing address for that attorney,

---

[73] *Id.* at pp. 3-4.
[74] R. Doc. 44 at p. 1.
[75] R. Doc. 44-2 at p. 4.
[76] R. Doc. 44 at pp. 1-2; R. Doc. 44-2 at p. 5.
[77] R. Doc. 44-1 at p. 4; R. Doc. 44-2 at ¶ 11.

or (2) that Defendants should communicate with a non-attorney third party rather than the class member.[78]  In the first instance, the class notice will be mailed to the attorney's last known address contained in Defendants' records, as updated from an NCOA search by the settlement administrator.  In the second instance, the class notice will be mailed to the class member's last known address contained in Defendants' records as updated from an NCOA search by the settlement administrator.[79]  The Class Settlement Agreement provides that the settlement administrator's responsibilities include, but are not limited to, giving notice, obtaining new addresses for returned mail, acting as a liaison between class members and the parties, distributing payments to class members and any other tasks reasonably required to effectuate the foregoing.[80]

The Class Settlement Agreement further provides that Defendants will provide a list of class members and their addresses to the settlement administrator within 30 days of the Court's order preliminarily approving the class settlement, and that notice of the proposed settlement shall be sent within 45 days of the Court's order preliminarily approving the class settlement.[81]

### D. Opt-Out Procedure and Opportunity to Object

Class members wishing to opt out of the settlement agreement may do so by mailing a written request for exclusion to the settlement administrator, postmarked no more than 105 days after the Court's order preliminarily approving the class

---

[78] R. Doc. 44-2 at p. 4.
[79] *Id.* at p. 5.
[80] *Id.*
[81] *Id.* at p. 4.

settlement.[82]  Within 14 days of receipt of a request for exclusion, the settlement administrator must forward a copy to class counsel and to counsel for Defendants.[83] In the request for exclusion, a class member must include his or her full name, address, telephone number and a statement that he or she wishes to be excluded from the class action settlement.[84]

Class members also have the right to object to the proposed settlement agreement by filing with the Court a written notice of objection no more than 105 days after the Court's order preliminarily approving the class settlement.[85]  The written objection must include the following: (1) the class member's full name, address and telephone number; (2) a statement of the objection; (3) a detailed description of the facts underlying the objection; (4) a detailed description of the legal authorities that support each objection; (5) a statement noting whether the class member intends to appear at the Fairness Hearing; (6) a list of all witnesses that the class member intends to call by live testimony, deposition testimony, affidavit or declaration testimony; and (7) a list of exhibits that the class member intends to present at the Fairness Hearing.[86]  The Class Settlement Agreement provides that counsel for the parties may, but need not, respond to the objections with a memorandum of law of no more than 15 pages, filed and served prior to the Fairness Hearing.[87]

---

[82] R. Doc. 44-2 at pp. 6-7.
[83] *Id.* at p. 7.
[84] *Id.*
[85] *Id.* at p. 7.
[86] *Id.* at p. 8.
[87] *Id.* at p. 8.

Unless otherwise ordered by the Court, failure to file an objection with the Court will bar a class member from participating at the Fairness Hearing.[88] A class member who has filed an objection may, but need not, appear at the Fairness Hearing. Unless otherwise ordered by the Court, a class member who fails to file an objection in the manner provided shall be deemed to have waived such objection and shall be foreclosed from making any objection to the fairness, reasonableness or adequacy of the settlement or the award of attorneys' fees to class counsel.[89]

### E. Claims Administration

The parties move to have First Class, Inc. ("FCI") appointed as the claims administrator.[90] The Class Settlement Agreement provides that the settlement administrator's responsibilities include, but are not limited to, giving notice of the settlement, obtaining new addresses for returned mail, acting as a liaison between class members and the parties, distributing payments to class members and any other tasks reasonably required to effectuate the foregoing.[91] The parties agree that the claims administrator will handle administration of the notice of settlement, objections thereto and the settlement checks.[92]

### F. Attorney's Fees

The parties have agreed that Defendants will pay all reasonable attorney's fees and costs to class counsel pursuant to 15 U.S.C. § 1692k(a)(3), to be determined by

---

[88] *Id.* at p. 8.
[89] *Id.*
[90] *Id.* at p. 4.
[91] *Id.* at p. 5.
[92] R. Doc. 44-1 at p. 12.

the Court absent an agreement by the parties.[93]  If counsel are unable to reach an agreement regarding attorney's fees, the parties have agreed that class counsel will file a motion for attorney's fees and costs pursuant to Fed. R. Civ. P. 23(h) within 30 days after the Court's order preliminarily approving the settlement.[94]  The parties submit that class counsel are not requesting that their attorney's fees be deducted from the settlement amount agreed to by the parties.[95]

### G. Release

In exchange for the settlement benefits described above, class members will release all claims made or which could have been made against Defendants, or which in any way arise out of the allegations that were or could have been made by class members arising out of the Defendants' mailing of debt collection letters on behalf of Mariner Finance of Harvey, which failed to notify the recipient that interest and/or fees are accruing on the debt owed to Mariner Finance of Harvey.

## IV.   PRELIMINARY FAIRNESS DETERMINATION

### A. Legal Standard

A class action may not be settled, dismissed, or compromised without the district court's approval.[96]  Although both parties desire settlement in this case, the Court is not at liberty to merely rubberstamp approval.  The Court may approve settlement "only after a hearing and on finding that it is fair, reasonable, and

---

[93] R. Doc. 44-2 at p. 5.
[94] *Id.*
[95] R. Doc. 44-1 at p. 4.
[96] Fed. R. Civ. P. 23(e).

adequate."[97]  "The purpose of having the Court conduct an independent inquiry into the fairness of a class action settlement is to 'ensure that the settlement is in the interest of the class, does not unfairly impinge on the rights and interests of dissenters, and does not merely mantle oppression.'"[98]

Where, as here, the parties seek preliminary approval of a class action settlement, the standards are not as stringent as those applied to a motion for final approval.[99]  "If the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval."[100]

## B. Discussion

Here, the proposed Class Settlement Agreement appears fair, reasonable and adequate in all respects.  The settlement was negotiated between the parties at arms' length, represented by experienced and capable attorneys on both sides who were familiar with the factual and legal issues of the case.  "Class counsel's opinion should be presumed reasonable because they are in the best position to evaluate fairness due to an intimate familiarity with the lawsuit."[101]  Additionally, the settlement terms

---

[97] Fed. R. Civ. P. 23(e)(2).
[98] *Henderson v. Eaton,* Civ. A. No. 01-0138, 2002 WL 31415728, at *2 (E.D. La. Oct. 25, 2002) (quoting *Reed v. General Motors Corp.,* 703 F.2d 170, 172 (5th Cir. 1983)).
[99] *In re Pool Prods. Distrib. Market Antitrust Litig.,* 310 F.R.D. 300, 314 (E.D. La. 2015) (citing *Karvaly v. eBay, Inc.,* 245 F.R.D. 71, 86 (E.D.N.Y. 2007)).
[100] *In re Pool Prods.,* 310 F.R.D. at 314-15 (citations omitted).
[101] *Turner v. Murphy Oil USA, Inc.,* 472 F. Supp. 2d 830, 852 (E.D. La. 2007) (citation omitted).

seem fair and, "If the terms are fair, the court may reasonably conclude that counsel did perform adequately."[102]

The parties further assert that the settlement was reached after over almost a year of litigation, discovery and motion practice.[103]  The parties claim that they have engaged in extensive arms-length discussions lasting several weeks to resolve this matter, which culminated in an agreement to settle the claims of Plaintiffs and the class members.[104]  The parties assert that their counsel have investigated and analyzed the legal and factual issues presented in this case, the risks and expense involved in pursuing litigation to conclusion and the likelihood of recovering damages in excess of those obtained through the settlement, the protracted nature of the litigation and the likelihood, costs and possible outcomes of one or more procedural and substantive appeals.[105]  The parties assert that there was no fraud or collusion behind the settlement, which was the product of serious, informed, non-collusive negotiations among counsel.[106]  It is evident from the proposed Class Settlement Agreement and the proposed Notice of Settlement that counsel for the parties are familiar with the factual and legal issues in this case.[107]

With respect to the economic fairness of the proposed Class Settlement Agreement, the parties assert that the proposed settlement is within the range of possible recovery.[108]  The parties point out that the amount of statutory damages in

---

[102] *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981) (footnote omitted).
[103] R. Doc. 44 at p. 1.
[104] R. Doc. 44-1 at p. 3.
[105] *Id.*
[106] *Id.* at p. 8.
[107] *See*, R. Docs. 44, 44-1 at p. 10, 44-2 & 44-4.
[108] R. Doc. 44-1 at pp. 9-10.

this class action is limited by the FDCPA.[109]  The parties assert that 15 U.S.C. §

1692k(a)(2)(B)(ii) limits monetary damages in a class action to an amount not to

exceed the lesser of $500,000 or one percent of the Defendants' net worth.  The parties

have agreed that Defendants will pay $10,000 in statutory damages to the class,

which is 100% or more of the maximum amount of statutory damages that could be

recovered under the FDCPA if a class was successfully certified in the litigation and

Plaintiffs prevailed on the merits at trial and on appeal.[110]  Given the expense and

likely duration of the litigation, along with the remaining dispute regarding damages,

the parties claim that this amount is reasonable and should be approved for a

preliminary settlement.[111]

The Court agrees that the foregoing economic benefits provided by the

proposed Class Settlement Agreement are within a reasonable range for approval

because the class members will obtain virtually all of the relief sought in the

Amended Class Action Complaint.[112]  Thus, the economic terms of the proposed Class

Settlement Agreement appear fair.

The terms of the proposed settlement agreement also do not appear to give

preferential treatment to the proposed class representatives or any individual

members of the settlement class.  As discussed above, each class member who submits

a claim will receive a pro rata share of $10,000, and the class representatives, Ms.

---

[109] R. Doc. 44-1 at p. 9.
[110] *Id.*
[111] *Id.* at pp. 9-10 (citing *Cope v. Duggins*, 203 F. Supp. 2d 650, 653-54 (E.D. La. 2002) (approving a class action settlement in an FDCPA case where the settlement was 60% of the maximum recovery)).
[112] R. Doc. 14.

Bardales and Mr. Russell, will receive $1,000 each for their individual claims and $3,000 each for their services as class representatives. "Federal courts consistently approve incentive awards in class action lawsuits to compensate named plaintiffs for the services they provide and burdens they shoulder during litigation."[113] The Court finds the proposed settlement incentive compensation of $3,000 for Plaintiffs' efforts and participation falls within the range of incentive compensation that has been approved in similar cases.[114] As another Section of this Court previously explained, "[W]hen the incentive compensation falls in the modest range of $2,000 to $3,000, it is generally held unnecessary to consider the amount of time and money spent in the litigation and other circumstances relating to costs."[115] The parties have agreed that the class representative incentive award is in addition to the class settlement fund and will not reduce or otherwise affect the class settlement fund.[116] Accordingly, the Court finds the proposed incentive compensation to the named Plaintiffs is fair and reasonable.

---

[113] *Henderson v. Eaton,* Civ. A. No. 01-0138, 2002 WL 31415728, at *6 (E.D. La. Oct. 25, 2002) (citation omitted).

[114] *Henderson,* Civ. A. No. 01-0138, 2002 WL 31415728 at *6 (approving $3,000 incentive for a class representative who "participated extensively in the litigation, including submitting to written and oral discovery and opening her finances to inspection and cross-examination" and missing work when necessary to attend to litigation matters); *Cope v. Duggins*, 203 F. Supp. 2d 650, 653 (E.D. La. 2002) (awarding $4,250 in settlement to named plaintiff when class was awarded $8,000 in settlement); *See In re Pool Prods. Distrib. Market Antitrust Litig.,* 310 F.R.D. 300, 315 (E.D. La. 2015) (approving a "modest incentive award of $500 each for the Class Representatives, to compensate them for the assistance they have provided to Class Counsel in developing the facts of the case by reviewing the complaints, submitting to a multi-hour deposition, preparing for the deposition, and gathering and submitting documents to Class Counsel."); *Jenkins v. Trustmark Nat. Bank*, 300 F.R.D.291, 306 (S.D. Miss. 2014) (approving $5,000 service awards for each of the seven class representatives who expended substantial time and effort in representing the settlement class, including by submitting to interviews, locating and forwarding responsive documents, and participating in conferences with class counsel).

[115] *Henderson,* Civ. A. No. 01-0138, 2002 WL 31415728 at *6 (*citing* The National Association of Consumer Advocates, Standards and Guidelines for Litigating and Settling Consumer Class Actions, 176 F.R.D. 375 (West 1998)).

[116] R. Doc. 44-1 at p. 4.

The Court further finds that the proposed Class Settlement Agreement does not grant excessive compensation to any of the attorneys, since Defendants have agreed to pay all reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).[117]  The Class Settlement Agreement states that if counsel for the parties are unable to reach an agreement regarding attorney's fees, the issue will be referred to this Court for a final decision.[118]  The parties have also agreed that an award of attorney's fees to class counsel is in addition to the class settlement fund and will not reduce or otherwise affect the class settlement fund.[119]

The Class Settlement Agreement also calls for the release of all claims made, or which could have been made, or which in any way arise out of the allegations that were or could have been made by any class member against Defendants, arising out of the debt collection letters sent by Defendants on behalf of Mariner Finance of Harvey that failed to notify consumers that interest and/or fees are accruing on the debt owed.  This release is not impermissibly broad, as it is consistent with other releases approved within and outside this Circuit.[120]

---

[117] R. Doc. 44-2 at p. 5.

[118] *Id.*

[119] R. Doc. 44-1 at p. 4.

[120] *In re Pool Prods. Distrib. Market Antitrust Litig.*, 310 F.R.D. 300, 316 (E.D. La. 2015) (citing *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 311-12 (W.D. Tex. 2007)); *In re OCA, Inc. Securities and Derivative Litigation*, Civ. A. No. 05-2165, 2008 WL 4681369, at *6 (E.D. La. Oct. 17, 2008); *See, In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 221 (5th Cir. 1981) (quoting *Patterson v. Stovall*, 528 F.2d 108, 110 n.2 (7th Cir. 1976)).

## V.   NOTICE

### A. Content of the Notice

When class certification is sought under Fed. R. Civ. P. 23(b)(3), as in the instant case, notice of the proposed settlement agreement must state the following: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through an attorney if the member so desires; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on members under Rule 23(c)(3).[121]  Rule 23(e) further provides that the claims, issues, or defenses of a certified class may be settled only with the court's approval and that the court must direct notice in a reasonable manner to all class members who would be bound by the proposed settlement.[122]

The Court has reviewed the proposed notice and finds that it meets most of the requirements of Rule 23(c)(3) and Rule 23(e)(1).  The plain language of the notice apprises all potential class members of the nature of the action, the definition of the class, the class claims, the class members' right to be heard, the class members' right to exclusion, and the binding effect of a class judgment.[123]  The notice also discloses that Defendants have established a settlement fund of $10,000 and all class members

---

[121] Fed. R. Civ. P. 23(c)(2)(B).
[122] Fed. R. Civ. P. 23(e)(1).
[123] R. Doc. 44-4.

who submit a claim will be sent a check constituting their pro rata share.[124]  The notice states that the class size is approximately 821 people.[125]

However, the Court finds that the proposed notice fails to adequately define the proposed class.  Specifically, the proposed notice defines the class as follows:

> The Class is defined as all persons living in Louisiana who (i) within one year prior to the filing of this action (ii) were sent a letter by Defendants in the form of <u>Exhibit 1 or 2</u>, attached to the Amended Complaint (Doc. Nos. 14-1 and 14-2) (iii) in an attempt to recover an alleged obligation accruing interest and/or fees incurred for personal, family, or household purposes; (iv) in which Defendants did not disclose that they were continuing to add interest and/or fees to the subject account.[126]

The Court finds that the foregoing definition fails to apprise proposed class members of the timeline involved, as it fails to specify when the underlying action was filed. Ms. Bardales filed her original Class Action Complaint in this Court on January 16, 2019.  As such, the proposed notice must be amended to specify that the class is defined as "all persons living in Louisiana who (i) within one year prior to the filing of this action on January 16, 2019 . . . ."  The proposed notice must also be revised with respect to the reference to "<u>Exhibit 1 or 2,</u> attached to the Amended Complaint (Doc. Nos. 14-1 and 14-2)" contained in the class definition,[127] as the parties have not indicated that the notice will include a copy of the Amended Class Action Complaint and the exhibits thereto.  The class definition shall, therefore, be revised in pertinent part to provide that, "(ii) were sent a letter by Defendants in the form of <u>Exhibit 1 or</u>

---

[124] *Id.* at p. 3.
[125] *Id.*
[126] R. Doc. 44-4 at p. 2 (emphasis in original).
[127] *Id.*

2, attached hereto, (iii) in an attempt . . . .", and the notice must include a copy of the two letters, labeled as Exhibit 1 and Exhibit 2.

The Court further finds that the proposed Notice fails to inform all potential class members of the time and manner for requesting exclusion from the class and the deadline for filing a claim. The proposed notice leaves blank the deadline for class members to submit a claim to the class administrator, to opt-out of the settlement and to object to the proposed settlement, presumably with the intent of counsel to fill-in the dates in accordance with the Court's order preliminarily approving settlement.[128] The Court notes, however, that the only deadline provided for class members to submit their claim is in the proposed Order attached to the Joint Motion for Preliminary Approval of Class Action Settlement, which provides that class members must submit their claim no later than 60 days after the Court's order preliminarily approving settlement.[129] The Court also notes that the only deadline provided for class members to opt-out of the settlement is in the proposed Class Action Settlement, which provides that class members must postmark their written request to opt-out no more than 105 days of the Court's order preliminary approving the settlement agreement.[130] Finally, the Court notes that the parties have submitted two different deadlines for class members to object to the proposed settlement. The proposed Class Settlement Agreement provides that class members must file their objections to the settlement agreement with the Court no more than 105 days after

---

[128] *Id.* at pp. 3 & 4.
[129] R. Doc. 44-3 at p. 4.
[130] R. Doc. 44-2 at pp. 6-7.

the Court's order preliminarily approving the class settlement,[131] but the proposed Order attached to the Joint Motion provides that class members must file their objections within 60 days of the Court's order preliminarily approving settlement.[132]

In light of the foregoing, the Court finds that the proposed notice must be amended to provide that class members who wish to submit a claim, opt-out of the settlement or object to the proposed Class Settlement Agreement shall have 45 days from the mailing date of the notice to do so.

### B. Method of Notice

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."[133] "The Due Process Clause also gives unnamed class members the right to notice of the settlement of a class action."[134]  The notice must be "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[135]  According to the Fifth Circuit, "the type of notice to which a member of a class is entitled depends upon the information available to the parties about that person."[136]  "Thus, due process does not require *actual* notice to all class members who may be bound by the litigation."[137]

---

[131] R. Doc. 44-2 at p. 7.

[132] R. Doc. 44-3 at p. 4.

[133] Fed. R. Civ. P. 23(c)(2)(B).

[134] *In re Pool Prods. Distrib. Market Antitrust Litig.*, 310 F.R.D. 300, 317 (E.D. La. 2015) (citing *Fidel v. Farley*, 534 F.3d 508, 513–14 (6th Cir. 2008)).

[135] *In re Pool Prods.*, 310 F.R.D. at 317 (quoting *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005)) (internal quotations omitted).

[136] *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1098 (5th Cir. 1977).

[137] *In re Pool Prods.*, 310 F.R.D. at 317 (citing *Fidel*, 534 F.3d at 514) (emphasis in original).

Here, the proposed Class Settlement Agreement provides that each class member will be notified by first class United States mail to the last known address as listed in Defendants' records, as updated from an NCOA search by the settlement administrator, unless the class member has informed Defendants in writing, as of the date of the Court's order preliminarily approving the settlement: (1) that he or she is represented by an attorney and provided a mailing address for that attorney, or (2) that Defendants should communicate with a non-attorney third party rather than the class member.  Defendants have agreed to provide a list of class members and their addresses to the settlement administrator within 30 days of the Court's order preliminarily approving the settlement, and that the settlement administrator will send notice to the class within 45 days of the Court's order preliminarily approving the settlement.[138]  The proposed Class Settlement Agreement further provides that the settlement administrator is responsible for giving notice of the settlement and obtaining new addresses for returned mail.[139]

The proposed notice satisfies the requirements of Rule 23(c)(2)(B) and due process.  The Court recognizes that in many cases the proposed notice is published in print and/or on the web in order to provide notice to class members whose mailing addresses are unavailable.[140]  Here, mailing the notice to potential class members at the addresses provided by Defendants, as updated from an NCOA search conducted

---

[138] R. Doc. 44-2 at p. 4.

[139] *Id. at* p. 5.

[140] *See*, *In re Pool Prods.*, 310 F.R.D. at 318 (direct emailing of notice to those potential class members for whom the parties have a valid email address, along with publication of the notice in print and on the internet, satisfied the requirements of Rule 23(c)(2)(B) and due process); *In re OCA, Inc. Securities and Derivative Litigation*, Civ. A. No. 05-2165, 2008 WL 4681369, at *16 (E.D. La. Oct. 17, 2008) (same).

by the settlement administrator, is the "best notice practicable under the circumstances" because the Defendants have made a reasonable effort to identify the class members for individual notice.[141]

Additionally, publication of the notice is not necessarily required, especially where, as here, the information regarding the names and addresses of the potential class members comes from a reliable source and there is a mechanism in place in the event that any notices are returned undeliverable. The direct mailing of notice to potential class members by first class United States mail to the addresses provided by Defendants, as updated from an NCOA search by the settlement administrator, is reasonably calculated to apprise the potential class members of the settlement agreement.

Accordingly, the Court approves the proposed Notice of Settlement,[142] as modified pursuant to this Order, and the plan of notice.

## VI.   CLAIMS ADMINISTRATOR

In the Joint Motion for Preliminary Approval of Class Settlement, the parties seek to have First Class, Inc. ("FCI") appointed as the claims administrators.[143] As the claims administrator, FCI will be responsible for: (1) mailing the notice of settlement within 45 days of this Order; (2) obtaining new addresses for notices that are returned as undeliverable; (3) acting as a liaison between class members and the parties; (4) distributing payments to class members; (5) any other tasks reasonably

---

[141] *See, In re OCA, Inc. Securities and Derivative Litigation*, Civ. A. No. 05-2165, 2008 WL 4681369 at *16.

[142] R. Doc. 44-4.

[143] R. Doc. 44-1 at p. 12; R. Doc. 44-2 at p. 4.

required to effectuate the foregoing;[144] and (6) answering questions from potential class members regarding the proposed settlement agreement.[145]

Although it is customary for parties to provide information regarding the estimated fees and expenses that will be sufficient to cover these administrative costs,[146] the parties in this case have agreed that, "Defendants will pay the costs of administration, distribution, and mailing the notice to the class members, including the expense of the distribution of checks to the class members, and a National Change of Address (NCOA) search upon preliminary approval of class settlement.  These administration expenses exclude any attorneys' fees."[147]

The Court is satisfied that FCI will competently administer the settlement. Thus, the Court appoints First Class, Inc. as the claims administrator.

## VII.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiffs' Motion For Class Certification[148] is **GRANTED.  IT IS FURTHER ORDERED** that the Joint Motion for Preliminary Approval of Class Settlement and Preliminary Determination on Class Certification[149] is **GRANTED in part, as modified,** and **DENIED in part, as moot.**   The Joint Motion for Preliminary Approval of Class Settlement and

---

[144] R. Doc. 44-2 at pp. 4, 5.

[145] R. Doc. 44-4 at p. 6.

[146] *See, In re Pool Prods. Distrib. Market Antitrust Litig.*, 310 F.R.D. 300, 318 (E.D. La. 2015) (proposed claims administrator approved where parties asserted that $145,000 would be sufficient to cover the costs to administer the settlement); *See, In re OCA, Inc. Securities and Derivative Litigation*, Civ. A. No. 05-2165, 2008 WL 4681369, at *17 (E.D. La. Oct. 17, 2008). (proposed claims administrator approved where parties estimated that the cost of administering settlement would be between $160,000 and $175,000).

[147] R. Doc. 44-2 at p. 4.

[148] R. Doc. 39.

[149] R. Doc. 44.

Preliminary Determination on Class Certification is **GRANTED** to the extent that the parties seek preliminary approval of class settlement, but the parties must modify the proposed Notice of Settlement,[150] as specified in this Order, with respect to the class definition and the deadlines for proposed class members to submit a claim, to opt-out of the proposed settlement agreement and to file an objection to the proposed settlement agreement. The Joint Motion for Preliminary Approval of Class Settlement and Preliminary Determination on Class Certification is **DENIED as moot** to the extent that the parties seek a preliminary determination on class certification. A detailed procedural order will be issued in conjunction with this Order.

New Orleans, Louisiana, September 30, 2020.

**WENDY B. VITTER**
**United States District Judge**

---

[150] R. Doc. 44-4.